UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY MAY,

                    Petitioner,                       Case No. 12-13037
                                                          Honorable Thomas L. Ludington

v.

KENNETH T. MCKEE,

                    Respondent.

_____/

**OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING REPORT
AND RECOMMENDATION, DISMISSING PETITION, AND DENYING
CERTIFICATE OF APPEALABILITY AND PERMISSION TO PROCEED
IN FORMA PAUPERIS ON APPEAL**

On February 22, 2006, Petitioner Anthony May ("May") was convicted of one count of first-degree criminal sexual conduct following a jury trial in Kent County Circuit Court. He was then sentenced to a term of 14 to 40 years' imprisonment. On July 11, 2012, May filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition will be denied because May's six claims are without merit or procedurally defaulted.

**I**

The relevant facts were recited by the Michigan trial court and are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009). Those facts are as follows:

> The victim in this case, Ms. Maria Kogler, was a waitress at a restaurant, frequented by the petitioner [(May)] for a number of years. Petitioner and Ms. Kogler would regularly discuss her credit problems. Petitioner told Ms. Kogler that he was a creditor and could help fix her credit. Ms. Kogler never accepted petitioner's offers of help until March 2005, when her car had been repossessed. On March 21, 2005, petitioner and Ms. Kogler arranged to meet with petitioner's business partner—Richard or Rick—at a downtown restaurant to talk about fixing Ms. Kogler's credit. The business partner did not show up. Petitioner and Ms.

Kogler decided to have dinner and a drink since the business partner never showed up. Petitioner asked her if she wanted to go out for another drink but Ms. Kogler said she had to get home to the babysitter.

After dinner, petitioner took Ms. Kogler to his house so that he could change his clothes for his hot-tubbing appointment. While at petitioner's house, petitioner started kissing her neck and lips and picked her up and put her on the counter. Petitioner then engaged in sexual intercourse with Ms. Kogler despite her protestations and her failing to consent. When law enforcement contacted petitioner, he initially denied having any sexual contact with Ms. Kogler, but eventually admitted to having sex with her and suggested that she initiated the contact.

*See* Report & Rec 4 (citation omitted).

## II

After May was convicted and sentenced by the Kent County Circuit Court, he appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I.   INEFFECTIVE ASSISTANCE OF COUNSEL OCCURRED WHEN COUNSEL FAILED TO CHALLENGE CLEARLY BIASED JURORS, FAILED TO OBJECT AT CRUCIAL POINTS OF THE TRIAL, FAILED TO CALL EXPERT AND/OR OTHER WITNESSES, THUS CREATING AN UNFAIR AND PARTIAL TRIAL
>
> II.  THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING IRRELEVANT EVIDENCE IN VIOLATION OF THE 14TH AMENDMENT PROTECTION OF DUE PROCESS
>
> III. THE TRIAL COURT IMPROPERLY SCORED APPELLANT'S OFFENSE VARIABLE POINTS IN VIOLATION OF THE 14TH AMENDMENT PROTECTION OF DUE PROCESS

Report § Rec. 2, ECF No. 19.

The court of appeals found no merit to May's claims, and affirmed his conviction and sentence. *See People v. May*, No. 270047, 2007 WL 3085508 (Mich. Ct. App. Oct. 23, 2007) (per curiam).

May, proceeding pro se, sought leave to appeal to the Michigan Supreme Court. That court denied May's application for leave to appeal in a standard order. *See People v. May*, 746 N.W.2d 85 (Mich. 2008).

On June 2, 2010, May filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500–.508, raising the following claims:

I. PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL DURING JURY SELECTION AND THROUGHOUT HIS CRIMINAL TRIAL

II. TRIAL COURT ABUSED ITS DISCRETION WHEN IT ADMITTED EVIDENCE ABOUT PETITIONER'S ROMANTIC OVERTURES TO A WOMAN OTHER THAN THE VICTIM

III. THE TRIAL COURT IMPROPERLY SCORED APPELLANT'S OFFENSE VARIABLE POINTS IN VIOLATION OF 14TH AMENDMENT PROTECTION OF DUE PROCESS

IV. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL IN VIOLATION OF 6TH AMENDMENT CONSTITUTIONAL PROTECTIONS

V. THE PROSECUTOR COMMITTED MISCONDUCT WHEN MAKING HIGHLY PREJUDICIAL AND UNSUBSTANTIATED STATEMENTS TO THE JURY IN VIOLATION OF 14TH AMENDMENT PROTECTION OF DUE PROCESS

VI. THE TRIAL COURT FAILED TO DISMISS THE CASE WHEN THE STATE FAILED TO PROVE EVERY ELEMENT BEYOND A REASONABLE DOUBT, CONTRARY TO THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT

VII. THE JURY SELECTION PROCESS VIOLATED APPELLANT'S RIGHT TO A FAIR AND IMPARTIAL TRIAL GUARANTEED BY THE 6TH AMENDMENT

Report § Rec. 3.

On August 6, 2010, the trial court denied May's motion for relief from judgment, concluding that his claims were both barred by MICH. CT. R. 6.508(D)(3) and without merit. The

Michigan Court of Appeals and Michigan Supreme Court denied May's applications for leave to appeal in standard orders.  *See People v. May*, 815 N.W.2d 486 (Mich. 2012); *People v. May*, No. 305360 (Mich. Ct. App. Oct. 6, 2011).

On July 11, 2012, May, again proceeding pro se, filed an application for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan.  Pursuant to 28 U.S.C. § 636(b)(1), Magistrate Judge Paul J. Komives ("Judge Komives") reviewed May's habeas application.  May raised six claims as grounds for the writ, each of which he previously asserted in his motion for relief from judgment.

Upon review of May's habeas application, Judge Komives issued a report providing the following two recommendations:

1. The Court should conclude that the state courts' resolution of May's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny May's application for the writ of habeas corpus.

2. If the Court accepts this recommendation, the Court should also deny May's certificate of appealability.

Report § Rec. 27.

As contemplated by 28 U.S.C. § 636(b)(1)(C), May filed objections to Judge Komives's Report and Recommendation on August 1, 2013.  May contests Judge Komives's conclusions on the following points:

(1) Whether he received ineffective assistance of trial and appellate counsel in violation of his Sixth Amendment rights (objection I and VI);

(2) Whether his due process rights were violated when the trial court admitted "inadmissible hearsay" (objection II);

(3) Whether his due process rights were violated when the trial court scored his offense variables in a way that enhanced his sentence (objection III);

(4) Whether there was sufficient evidence to sustain his conviction (objection IV);

(5) Whether his due process rights were violated when the prosecutor made highly prejudicial and unsubstantiated statements to the jury (objection V).

Pursuant to 28 U.S.C. §636(b)(1)(C), each issue will be addressed de novo.

## III

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996), governs all habeas applications filed after April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 326−27 (1997). In this case, May's habeas application was filed on July 11, 2012; therefore, his petition is governed by this act.

AEDPA created new standards for review of state court decisions under 28 U.S.C. §2254(d). Paragraph (d), as amended, reads as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

Under §2254 (d)(1), a federal court may grant a writ of habeas corpus under two different clauses, both of which provide the basis for relief: (1) the "contrary to" clause or (2) the "unreasonable application" clause. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).

Under the "contrary to" clause, a federal court may grant habeas relief in two different ways. First, if the state court arrives at a conclusion that contradicts the governing law set forth in Supreme Court cases. *Id.* Second, if the state court decides a case differently than the

-5-

Supreme Court has decided on a set of materially indistinguishable facts. *Id.* As the Supreme Court explains, the words "contrary to" should be construed to mean "diametrically different, opposite in character, or mutually opposed." *Id.* at 405. Accordingly, "the state court's decision must be substantially different from . . . [relevant Supreme Court precedent]." *Id.*

A federal court may grant habeas relief under the "unreasonable application" clause in two different ways as well. First, "if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Id.* at 413. Second, if the state court decision either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context where it should apply. *Williams*, 529 U.S. at 407; *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005). The proper inquiry for the "unreasonable application" analysis is whether the state court's decision was "objectively unreasonable" and not simply erroneous or incorrect. *Williams*, 529 U.S. at 409−11. The Supreme Court explains that the writ of habeas corpus "is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in jurisdiction that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 131 S. Ct. at 786–87.

When analyzing whether a state court's decision is "contrary to" or an "unreasonable application" of clearly established federal law, a federal court may only look to the holdings, as opposed to dicta, of the Supreme Court's decisions as of the time of the relevant state-court

decision. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003); *Williams*, 529 U.S. at 412. However, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases—indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).  In addition, the court may not look to lower federal court decisions to formulate the relevant rule of law; but, it may look to lower federal courts decisions to assess the reasonableness of the state court's resolution of an issue. *Smith v. Stegall*, 385 F.3d 993, 998 (6th Cir. 2004). Accordingly, "[u]nder AEDPA, if there is no 'clearly established Federal law, as determined by the Supreme Court,' that supports a habeas petitioner's legal argument, the argument must fail." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)) (emphasis in original).

## IV

May raises six objections to Judge Komives report and recommendation. Each of May's objections will be addressed de novo.  Thereafter, this Court may "accept, reject, modify, in whole or in part" the recommendations provided by Judge Komives. *See* 28 U.S.C. § 636 (b)(1)(C).

## A

First, May argues that he received ineffective assistance of trial counsel and appellate counsel in violation of his Sixth Amendment rights.  Specifically, May argues that trial counsel was ineffective during *voir dire* for failing to challenge one juror, Ms. Wisner.  He alleges Ms. Wisner was biased because she had experience with criminal sexual conduct—her father molested her brother and sister—the same crime for which he was charged.  Second, May alleges his appellate counsel was ineffective for failing to raise viable claims on appeal.

The Supreme Court decision in *Strickland v. Washington*, "provides sufficient guidance for resolving virtually all ineffective-assistance claims." *Williams*, 529 U.S. at 363.   In *Strickland,* the Supreme Court held that defendants are entitled to receive effective counsel, whether retained or appointed, who will provide the efforts necessary to ensure that prisoners receive a fair trial. *Strickland v. Washington*, 466 U.S. 668, 685 (1984).  To establish the ineffective assistance of counsel, petitioner must satisfy two components:

(1) Demonstrating that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.

(2) Demonstrating that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable. *Id*. at 687.

May's representation was not ineffective under either test.

## 1

To prove counsel's performance was deficient, May must show that counsel's representation was less than a "reasonably competent attorney." *Id*. This is a high standard to meet.  *Id*. at 689.  Indeed, May must demonstrate that counsel's acts or omissions were not of reasonable professional judgment. *Id*. at 688.  The Court must assess counsel's performance given all the circumstances. *Id*.  The Sixth Amendment does not provide a list of requirements that define effective assistance of counsel; but, there is a presumption that counsel will fulfill his role, providing basic duties, as legal representation for the criminal defendant in the adversarial process. *Id*.  Matters of trial strategy are virtually unchallengeable because an attorney is permitted a wide range of latitude.  *Id*.  May would need to show that his attorney's acts were a matter other than trial strategy and less than a reasonable competent attorney.

The Sixth Circuit held that "[a]n attorney's actions during *voir dire* are considered to be matters of trial strategy. A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial without obvious fairness." *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001). May has not demonstrated that Trial Counsel's decision to maintain Ms. Wisner as a juror was deficient since the decision was a matter of trial strategy. Because the challenged conduct was a matter of trial strategy, habeas relief will not be granted on this issue.

**2**

The Sixth Circuit has held that "to maintain a claim that a biased juror prejudiced him . . . the petitioner must show that the juror was actually biased against him." *Hughes*, 258 F.3d at 458. In this case, trial counsel specifically questioned Ms. Wisner to determine whether her past experience with criminal sexual conduct would taint her decision in May's case. Ms. Wisner responded that she would decide the case based on the evidence:

> Mr. Rominger: I don't want to pick on you, Ms. Wisner, about your background, but you did indicate that your father was convicted of criminal sexual conduct?
>
> Juror sitting in seat four: Yes.
>
> Mr. Rominger: Did that involve you?
>
> Juror sitting in seat four: No.
>
> Mr. Rominger: Who did it involve?
>
> Juror sitting in seat four: My brother and my sister.
>
> Mr. Rominger: Does that give you any sense of predisposition as to the mindset or behaviors of people who are merely accused of sexual conduct? In other words, you've had experience in your own family with somebody very close to you who's in a position of trust and close fiduciary, and violated to the core of everybody's being those standards of trust, and the criminal law had its consequence. Does that give you any kind of demeanor or predisposition that if somebody is charged with it, there is a likelihood of responsibility, where there's

smoke there must be fire, and therefore your listening about these facts and circumstances are predisposed to believe the accuser against the rejector?

Juror sitting in seat four: No.

Mr. Rominger: That experience will not taint in any way your open-minded and fair consideration of the facts as you find them in this case?

Juror sitting in seat four: No.

Mr. Rominger: The defense does not have to worry that Ms. Wisner is up there harboring ill-will

Juror sitting in seat four: No.

Mr. Rominger: --against anybody accused of such a heinous and horrible thing?

Juror sitting in seat four: No.

Mr. Rominger: And you know better than anybody—

Juror sitting in seat four: Yes.

Mr. Rominger: --how cruel and horrible that conduct is.

Juror sitting in seat four: Yes.

Mr. Rominger: And you won't hold me to any other standard?

Juror sitting in seat four: Yes.

Mr. Rominger: Thank you very much.

Trial Tr. vol. I, at 80–82, *attached as* Rule 5 Materials Ex. 6, ECF No. 16.

Ms. Wisner's statements, under oath, undermine May's claim that she was biased against him. In addition, trial counsel complied with the Supreme Court's direction for evaluating whether a juror is biased. The Supreme Court indicated that "when faced with an allegation of bias, the trial court is required to ask the juror if he or she will set aside any opinion they may hold and decide the case on the evidence. The trial court should then evaluate whether that juror's protestations of impartiality are believable." *Williams v. Bagley*, 380 F.3d 932 (6th Cir.

2004) (quoting *Patton v. Yount*, 467 U.S. 1025, 1036 (1984)).  Here, trial counsel repeatedly questioned Ms. Wisner to evaluate whether she could set aside her own experiences and fairly decide the case. Trial counsel acknowledged that Ms. Wisner's experience with criminal sexual conduct could potentially prejudice May's defense, so he then asked Ms. Wisner specifically whether she could give fair consideration to the facts in the case.  Ms. Wisner repeatedly responded and affirmed that she would do so.  Because the record does not reflect any reason for believing that Ms. Wisner was actually biased against May, habeas relief will not be granted on this issue.

**3**

May also asserts that he received ineffective assistance of appellate counsel. Specifically, he contends that appellate counsel did not raise all viable issues on appeal.  The Sixth Circuit states, "it is not necessary for appellate counsel to raise every nonfrivolous claim on direct appeal." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy . . . .  Nothing in the Constitution or our interpretation of that document requires such a standard.

*Jones v. Barnes*, 463 U.S. 745, 754 (1983).

Strategic and tactical decisions concerning which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo*, 281 F.3d at 579.  In this case, May has not identified a single viable claim that counsel should have brought on appeal; therefore, this Court cannot evaluate whether or not appellate counsel "ignored issues

-11-

that are clearly stronger than others" on appeal. *Id.* Accordingly, habeas relief is not warranted on this claim.

**B**

Second, May asserts that the trial court abused its discretion when it admitted inadmissible hearsay pursuant to the Michigan Rules of Evidence—MRE (803)(4). But May does not identify precisely what the alleged inadmissible hearsay consisted of, not in his petition or in his objections. Presumably, May is referring to the testimony of Pamela Jendritz, a registered nurse who testified at trial and an issue that May raised on direct appeal. *See May*, 2007 WL 3085508, at *1. The Michigan Court of Appeals summarized Ms. Jendritz's testimony as follows:

> Jendritz testified that, as she took the victim's medical history, the victim told her that she went to downtown Grand Rapids with a man, whom she had known for three years, and that, following dinner, the man took her to his house where, after he kissed her and pulled down her nylons, "it happened," despite her saying "no". Although Jendritz performed a "medical forensic evaluation," she took the victim's medical history "[f]or diagnosis and treatment," as she needed to determine whether the victim needed further medical care. Because the victim's statement to Jendritz was made for purposes of medical treatment, Jendritz's testimony was admissible pursuant to MRE 803(4), the hearsay exception for statements made in the course of medical treatment or medical diagnosis.

*Id.*

The Supreme Court has established that "it is not the province of federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 65 (1991). In addition, the federal court is not permitted to grant habeas relief, even if the trial judge incorrectly interpreted state law. *Id.* at 72. On habeas review, the federal court can only decide whether the defendant's conviction violated the Constitution, a federal law, or a treaty. *Id.*

Likewise, the Sixth Circuit states that "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case to deny the defendant the fundamental right to a fair trial." *Kelly v. Withthrow*, 25 F.3d 363, 370 (6th Cir. 1994). In this case, the trial court admitted evidence pursuant to a state court evidentiary rule, specifically MRE 803(4). On appeal, the Michigan Court of Appeals addressed the hearsay issue and concluded that Jendritz's testimony was admissible pursuant to MRE 804(3). *Id.* In addition, the Michigan Court of Appeals stated, "any objection to Jendritz's testimony would have been futile." *Id.* at *3. Thus, the issue of hearsay has been resolved in the state courts. And because May is disputing a state court evidentiary ruling, his claim does not implicate the Constitution, a federal law, or a treaty. *See Estelle*, 502 at 65. Accordingly, habeas relief is not warranted on this claim.

### C

Third, May asserts that his due process rights were violated when the trial court scored his offense variables in a way that enhanced his sentence. But again, this Court does not have the authority to address perceived errors in state law, unless a petitioner was denied fundamental fairness in the trial process. *See id.* at 67–68. The federal court is not permitted to grant habeas relief, even if the trial judge incorrectly interpreted state law. *Id.* at 72. *See also Cook v. Stega* ll, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, not cognizable in federal habeas review). In this case, May argues that the trial court departed from the Michigan sentencing guidelines. The Michigan Court of Appeals addressed the scoring offense and affirmed the trial court's decision. *See May*, 2007 WL 3085508, at *4. Because May is arguing

an  issue  of state law, particularly the application of state sentencing guidelines, this does not

implicate the Constitution.    Habeas relief is not warranted on this claim.

**D**

Fourth, May asserts that there was insufficient evidence to convict him, contrary to the

Fourteenth Amendment due process clause.  Specifically, May argues that because an expert's

testimony  undermines  the  victim's  testimony,  the  victim's  testimony—without  more—was

insufficient to establish a conviction of Criminal Sexual Conduct in the first degree under MICH.

COMP. LAWS § 750.520b(1)(f).

The due process clause protects the accused from a conviction that does not meet the

standard of beyond a reasonable doubt.  *Patterson v. New York*, 432 U.S. 197, 204 (1977).  On

appeal, the court must evaluate whether there was sufficient evidence in the record to support the

court's finding of beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).

The reviewing court is not required to judge whether it believes the decision of the trier of fact.

*Id*. at 319.   "It is the responsibility of the trier of fact to fairly resolve conflicts of the testimony,

to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*.

Therefore, if a defendant is found guilty of a crime, that conviction is preserved if "after viewing

the evidence in the light most favorable to the prosecution, any rational tier of fact could have

found the essential elements of the crime beyond a reasonable doubt."  *Id*.  If the reviewing court

finds that there was evidentiary support to meet the standard of beyond a reasonable doubt, then

the court must defer to the jury's resolution. *O'Hara v. Brigano*, 499 F.3d 492, 499 (6th Cir.

2007).

May has not demonstrated that there was insufficient evidence to convict him beyond a

reasonable doubt.  The victim testified that she objected to sexual contact with May, but that he

nevertheless persisted.   The Sixth Circuit has concluded that "the testimony of a rape victim alone is sufficient to support a defendant's conviction."  *United States v. Howard*, 218 F.3d 556, 565 (6th Cir. 2000).  In this case, the victim's testimony shows that she explicitly said "no" to sexual contact with May; however, May overcame her by force to accomplish sexual penetration. The victim testified as follows:

> Q: Now, you indicated you got done watching TV and you stood up to leave. Where did you go when you stood up to leave?
>
> A: Into the kitchen by the stove, which is, which is—it's not on there.
>
> Q: I'm going to show Exhibit 3 now. This stove you're referring to, do you see it in this picture?
>
> A: Yes.
>
> Q: Could you point it out for the jury in terms of that laser pointer? Now, you're coming from the living room at this point in time?
>
> A: Yes, and we walk over by the stove, which is—
>
> Q: What happens at the stove?
>
> A: That's when he started kissing me and he lifted me up and put me on the counter by microwave right there.
>
> Q: So which way are you facing? If we look at the picture, are you facing towards the shot or away, towards the door, when he puts you on the counter? Do you understand my question?
>
> A: Facing this way (indicating).
>
> Q: So you would be looking into the camera, if you will, when he put you on—
>
> A: Right.
>
> Q: I'm sorry?
>
> A: Yes.
>
> Q: What happens when he puts you up on the counter there?

-15-

A: Begins taking my nylons off.

Q: You said something about looking at a clock. Where was this clock located?

A: On the microwave, like right there (indicating).

Q: And what time was it that you saw?

A: 9:27.

Q: Now, when did he start talking to you about this Spain business trip? Was it while you are on the counter or before that?

A: By the stove, before that.

Q: Do you recall what you were wearing—you said he started taking your nylons off. What are you wearing at this point in time?

A: A dress.

Q: Why were you wearing a dress?

A: He had told me to wear a dress because we were going downtown somewhere nice for dinner and to wear a dress.

Q: Now, as he's taking your nylons off, what are you doing, what do you say?

A: I'm just saying, I'm just saying no. I'm shocked. I don't know what to do. I'm saying no.

Q: Why don't you fight him? Why don't you try to stop him?

A: Because he was a little bigger than I was and I was scared.

Q: Now, you say he lays you on the floor. Did he take your dress off at this point?

A: No.

Q: So you still have your dress on?

A: Yes.

Q: Was your underwear off?

A: Not all the way.

-16-

Q: What do you mean by "not all the way"?

A: I don't know, not all the way off.

Q: They're still on your legs or something?

A: Yes, I think so.

Q: Now, you said he put it inside you. What do you mean by that?

A: I meant he put his penis inside me.

Q: He put his penis in your vagina?

A: Yes.

Q: Did you want him to do that?

A: No.

Q: Did you tell him that?

A: I said no.

Trial Tr. vol. I, at 235–37. This testimony is sufficient to support the jury's findings of Criminal Sexual Conduct. *Howard*, 218 F.3d at 565.

Moreover, May has failed to demonstrate there was sufficient evidence at trial to contradict the victim's testimony and undermine his conviction beyond a reasonable doubt. In *O'Hara*, the defendant was accused of rape and kidnapping. 499 F.3d at 494. The victim testified that the defendant abducted and raped her, but other witness testimony contradicted the victim's allegations. *Id*. at 500. Nevertheless, the jury weighed the credibility of the witnesses, evaluated the evidence, and convicted the defendant on both counts. *Id*. The defendant brought a habeas petition arguing that the conflicting testimony foreclosed a conviction beyond a reasonable doubt. *Id*. at 499. The court held, however, that "a jury's verdict may be based entirely on circumstantial evidence." *Id*. at 500. In addition, the court reasoned that the victim's

testimony, even without more, was sufficient to establish the elements of both charges against the defendant. *Id*.

Similarly, in this case, even though some evidence may have undermined the victim's story, the jury resolved all credibility issues, decided the victim was the most believable, and convicted the defendant. The victim's testimony was sufficient to establish the elements of Criminal Sexual Conduct. *See* MICH. COMP. LAWS. §720. 520b(1)(f). Therefore, habeas relief is not appropriate on this claim.

## E

Lastly, May argues that his due process rights were violated when the prosecutor made highly prejudicial and unsubstantiated comments to the jury during his closing arguments. The standard the court uses to establish procedural misconduct reads as follows:

> We determine whether the statements were improper. If they appear improper, we then look to see if they are flagrant and warrant a reversal. To determine flagrancy, the standard set by this Court is: 1) whether the statements tended to mislead the jury or prejudice the defendant: 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidently before the jury; and 4) the total strength of the evidence against the accused. To reverse a conviction because of an improper non-flagrant statement, a reviewing court must determine that: 1) the proof of the defendant's guilt is not overwhelming; 2) the defense counsel objected; and 3) the trial court failed to cure the impropriety by failing to admonish the jury.

*United States v. Francis*, 170 F.3d 546, 549−550 (6th Cir. 1999) (internal citations omitted).

In this case, May has not identified the specific statements made by the prosecutor, during his closing arguments that attacked May's character. Importantly, "[i]t is not the job of a federal habeas court to search the record and ferret out potential prosecutorial misconduct claims. Rather, to be entitled to relief a petitioner must point to specific statements or comments which, alone or together, deprived him of a fair trial." *Thompson v. Trombley*, No. 06-12619, 2008 WL4427790, at *18 n.1 (E.D. Mich. Sept. 30, 2008). Because May has failed to point out

specific language to establish prosecutorial misconduct during closing arguments, May is not entitled to habeas relief on this claim.

**V**

Before May may appeal this Court's dispositive decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(B); FED. R. APP. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  *Id*. At 336–37.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2255 Proceedings, Rule 11, 28 U.S.C.A. foll. § 2255.

Having considered the matter, the Court concludes that May cannot make a substantial showing of the denial of a constitutional right.  Moreover, Judge Komives also indicated May should not be granted a certificate of appealability, and May raised no objection to this portion of the report and recommendation.  A certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

# VI

Accordingly, it is **ORDERED** that May's Objections, ECF No. 21, are **OVERRULED**.

It is further **ORDERED** that Judge Komives's Report and Recommendation, ECF No. 19, is **ADOPTED**.

It is further **ORDERED** that May's Petition, ECF No. 1, is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that permission to proceed *in forma pauperis* on appeal is **DENIED**. This is a final order and closes the case.

Dated: October 6, 2014                                     s/Thomas L. Ludington
                                                           THOMAS L. LUDINGTON
                                                           United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail, and upon Anthony May #144974, Bellamy Creek Correctional Facility, 1727 West Bluewater Highway, Ionia, MI 48846 by first class U.S. mail on October 6, 2014.

                              s/Tracy A. Jacobs
                              TRACY A. JACOBS